UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MALATHY SUNDARAM,                )<br>                                                       )<br>                    Plaintiff         )<br>                                                       )<br>v.                                                   )   Docket no. 2:15-cv-00121-GZS<br>                                                       )<br>COVERYS, PROSELECT INSURANCE   )<br>COMPANY, and INTEGRATED       )<br>INSURANCE SOLUTIONS,              )<br>                                                       )<br>                    Defendants.    )<br>                                                       ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the cross-motions for summary judgment filed by Plaintiff Dr. Malathy Sundaram ("Plaintiff" or "Dr. Sundaram") and Defendants COVERYS, ProSelect Insurance Company (together with COVERYS, "ProSelect"), and Integrated Insurance Solutions ("Integrated" and, together with ProSelect, "Defendants"). For the reasons explained herein, the Court GRANTS Plaintiff's Motion for Summary Judgment with Incorporated Memorandum of Law (ECF No. 21) ("Pl.'s Mot.") and DENIES both ProSelect's Motion for Summary Judgment with Incorporated Memorandum of Law (ECF No. 19) ("ProSelect's Mot.") and Integrated's Motion for Summary Judgment with Incorporated Memorandum of Law (ECF No. 20) ("Integrated's Mot.").

**I.     LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera–Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation." (citations omitted)). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at

trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

The above-described "standard is not affected by the presence of cross-motions for summary judgment." Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005) (citation omitted). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted); see also Alliance of Auto. Mfrs., 430 F.3d at 34 ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof.").

## II. FACTUAL BACKGROUND[1]

### A. The Insurance Policy

ProSelect issued a medical professional liability insurance policy, number 2-20191, to Dr. Sundaram, effective May 15, 2013 to May 15, 2014 (the "Policy"). (Stipulated Statement of Undisputed Facts for Phase I Summary Judgment Motion (ECF No. 18) ("SSUF") ¶ 3.) ProSelect issued a renewal medical professional liability insurance policy, number 2-20191, to Dr. Sundaram, effective May 15, 2014 to May 15, 2015.[2] (SSUF ¶ 4.) Under the Policy, and subject to the terms and limitations set forth therein, ProSelect agreed to pay "DAMAGES . . . because of a CLAIM for an INCIDENT in the performance of PROFESSIONAL SERVICES by YOU . . . ."

---

[1] The Court notes that the entire factual background comes from a single stipulated statement of undisputed facts and supporting documents, which the parties have stipulated to solely for purposes of deciding the pending motions. See D. Me. Local Rule 56(g).

[2] The provisions of the Policy applicable to the duty to defend at issue here remained unchanged in the language of the renewal policy.

3

(SSUF Ex. C at PageID # 329.)  The Policy's provision regarding the duty to defend states that Defendant ProSelect has "the right and duty to defend . . . any SUIT brought against YOU seeking DAMAGES that are covered by this POLICY . . . ."  (Id. at PageID # 331.)

"INCIDENT" is defined in the Policy as "any negligent act, error or omission . . . ."  (Id. at PageID # 339.)  "PROFESSIONAL SERVICES" is defined (in relevant part) as "[m]edical, surgical, dental or nursing treatment performed in the INSURED'S specialty . . . ."  (Id. at PageID # 340.)

The Policy sets forth certain exclusions from liability, including the exclusion of liability for any claims "[a]rising out of any dishonest, fraudulent, criminal or malicious acts or omissions or deliberate or intentional wrongdoing or bad faith committed or alleged to have been committed by any INSURED."  (Id. at PageID # 335.)

### B.     The McCullough Case

On January 28, 2014, an attorney representing Christine McCullough ("McCullough") sent a letter to Dr. Sundaram.  (SSUF ¶ 1.)  In the letter, McCullough's attorney alleged that McCullough was terminated by her employer, Home Health Visiting Nurses ("HHVN"), "because of [Dr. Sundaram's] false complaint that she was rude and inappropriate."  (SSUF Ex. A at PageID # 307.)

On June 24, 2014, McCullough filed suit against Dr. Sundaram in Maine Superior Court in York County. (SSUF ¶ 2.)  In that case, <u>Christine McCullough v. Malathy Sundaram and HomeHealth Visiting Nurses</u>, York Superior Court Docket Number CV-2014-0121 (the "McCullough Case"), McCullough brought two claims against Dr. Sundaram, one count of tortious interference with contract and one count of defamation.  (See SSUF Ex. B.)

4

The following description of McCullough's claims against Dr. Sundaram is based upon the allegations made in the McCullough Case complaint (SSUF Ex. B) (hereinafter, the "McCullough Complaint"):

McCullough was employed at HHVN as a visiting nurse at the time that she made a home visit to one of Dr. Sundaram's patients on January 7, 2014.  (Id. at PageID # 310.)  According to McCullough, a test revealed that the patient had an elevated "INR" test result.  (Id. at PageID # 311.)  McCullough asserts that she provided the patient's test result to Dr. Sundaram's medical office by telephone, and then called back on January 9, 2014 when she learned that Dr. Sundaram had not been in contact with the patient regarding the test result.  (Id.)  McCullough spoke to Dr. Sundaram's medical assistant about the office process by which messages were conveyed to Dr. Sundaram.  (Id. at PageID # 312.)  According to McCullough, the assistant told her that Dr. Sundaram might have been too busy to contact the patient.  McCullough then remarked that such a practice "could be considered negligent."  (Id.)

According to McCullough, when she called Dr. Sundaram's office later that day to report a new test result from the patient, this time at the low end of the therapeutic range for INR measurements, her call was connected to Dr. Sundaram.  (Id. at PageID # 313.)  Dr. Sundaram allegedly objected to the content and tone of McCullough's earlier conversation with the medical assistant.  (Id.)  According to McCullough, Dr. Sundaram refused to speak to the patient or to discuss the patient's test results with McCullough.  (Id.)  Dr. Sundaram then contacted a nursing supervisor at HHVN.  (Id. at PageID # 314.)  McCullough alleges that Dr. Sundaram "misrepresented the events to make herself look better at [McCullough's] expense."  (Id.)  According to McCullough, Dr. Sundaram complained that McCullough had overreacted, and Dr. Sundaram defended her handling of the messages as appropriate.  (Id.)  Dr. Sundaram allegedly

5

described McCullough as "rude" and asserted that "this is not the first time we have been treated badly by this RN." (Id.) Dr. Sundaram allegedly also stated that she sent HHVN a lot of business, but would no longer do so unless she received assurances that McCullough would not see any of Dr. Sundaram's patients. (Id. at PageID # 315.) The McCullough Complaint then asserts, "In saying this, Dr. Sundaram conveyed the message that she would not be satisfied unless HHVN fired [McCullough]." (Id.)

HHVN terminated McCullough's employment on January 13, 2014, allegedly as a result of the conversations between Dr. Sundaram and her supervisors at HHVN. (Id. at PageID # 315.)

The McCullough Complaint specifically alleges that Dr. Sundaram engaged in tortious interference with contract by "procur[ing] [McCullough's] discharge from employment through fraud and intimidation . . . ." (Id. at PageID # 317.) The McCullough Complaint specifically alleges that Dr. Sundaram defamed McCullough by "ma[king] false and defamatory statements about [McCullough] to [McCullough's] employer which Dr. Sundaram knew were false" and that "Dr. Sundaram acted with malice in making her false and defamatory statements about [McCullough]." (Id. at PageID # 318.)

### C. The Present Dispute

Dr. Sundaram and Defendants disagree on whether ProSelect is contractually obligated to provide Dr. Sundaram with a defense in the McCullough Case. On March 4, 2015, Dr. Sundaram brought suit by filing a complaint (the "Sundaram Complaint") (ECF No. 1-2) in Maine Superior Court in York County against Defendants. On April 1, 2015, the matter was removed to this Court. (Notice of Removal (ECF No. 1).)

ProSelect and Integrated each filed answers to the Sundaram Complaint. (ECF No. 6; ECF No. 1-8.) With the agreement of the parties and by the order of the Magistrate Judge, a bifurcated

schedule was established. In the first phase of the schedule, the parties were given an opportunity to make dispositive motions on the disputed issue of the duty to defend, with other motions and discovery reserved pending the resolution of those motions. (ECF No. 13.)

Plaintiff then filed her Motion for Summary Judgment (ECF No. 21), arguing that Defendant ProSelect has a duty to defend Plaintiff against the claims made in the McCullough Case. Likewise, ProSelect and Integrated each filed Motions for Summary Judgment (ECF Nos. 19 and 20), arguing that ProSelect has no duty to defend for two reasons: first, the claims made in the McCullough Case fall outside of the scope of the Policy's coverage; and second, the claims are in any case explicitly excluded from coverage under the Policy.

**III.   DISCUSSION**

Consistent with the bifurcated briefing schedule and the motions of the parties, this Court addresses only the question of whether the Policy imposes a duty on Defendant ProSelect to defend Dr. Sundaram in the McCullough Case.

It is well-established under Maine law that "whether an insurer has an obligation to defend its insured against a complaint is a question of law." Bucci v. Essex Ins. Co., 393 F.3d 285, 290 (1st Cir. 2005) (quoting Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998)) (citation omitted).

Under Maine law, the duty to defend is determined by a comparison test. The complaint in the underlying lawsuit is compared with the insurance policy to determine whether any legal or factual basis could be developed at trial that would obligate the insurer to indemnify the insured under the policy. See, e.g., Auto Europe, LLC v. Connecticut Indem. Co., 321 F.3d 60, 66 (1st Cir. 2003); York Ins. Group of Maine v. Lambert, 740 A.2d 984, 985 (Me. 1999) ("[W]e determine

a duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy . . . . A duty to defend exists if a complaint reveals a potential . . . that the facts ultimately proved may come within the coverage.") (internal citations and quotations omitted). A court applying the comparison test must resolve any ambiguity by finding a duty to defend. See Union Mut. Fire Ins. Co. v. Inhabitants of Town of Topsham, 441 A.2d 1012, 1015 (Me. 1982) (citing Travelers Indem. Co. v. Dingwell, 414 A.2d 220 (Me. 1980)).

The questions now before this Court are (1) whether the McCullough Complaint and the coverage terms of the Policy, when compared, give rise to a duty to defend under the comparison test, and (2) whether McCullough's claims are excluded from coverage under the "Dishonest or Criminal Acts" provision of the Policy.

### A. Comparison of the McCullough Complaint and the Policy

The Policy defines the scope of professional liability coverage as indemnification for "DAMAGES . . . because of a CLAIM for an INCIDENT in the performance of PROFESSIONAL SERVICES . . . ." (SSUF Ex. C at PageID # 329.) Substituting the applicable portions of the definitions of "Incident" and "Professional Services," the Policy provides indemnification for "DAMAGES . . . because of a CLAIM for any negligent act . . . in the performance of medical . . . treatment performed in the INSURED'S specialty . . . ." (Id. at PageID # 329, 339-340.)

Defendants urge this Court to conclude that the claims made in the McCullough Complaint fall outside of the scope of this coverage. First, they argue that neither of the claims against Dr. Sundaram are the result of an "Incident," because the McCullough Complaint alleges only that Dr. Sundaram engaged in intentional acts giving rise to each claim, rather than negligent acts. Second, they argue that the acts attributed to Dr. Sundaram did not occur in the performance of medical treatment.

8

### 1. The McCullough Complaint alleges that an "Incident" occurred.

The analysis of whether the McCullough Complaint alleges the occurrence of an "Incident" under the Policy parallels the analysis, below, of whether the claims are excluded under the Policy's "Dishonest or Criminal Acts" exclusion provision. In short, this Court must determine whether there is a possibility that the "facts ultimately proved could come within coverage." Commercial Union Ins. Co. v. Royal Ins. Co., 658 A.2d 1081, 1082 (Me. 1995). A defamation claim can succeed under Maine law by proving that the defendant acted negligently. See Morgan v. Kooistra, 941 A.2d 447 (Me. 2008). For the reasons set forth in Section B below, the McCullough Complaint does not exclude the possibility of negligence-based recovery on McCullough's defamation claim. Therefore, Dr. Sundaram's alleged acts do not conclusively fall outside of the scope of the definition of "Incident."

### 2. The alleged "Incident" occurred "in the performance of Professional Services."

Assessing Defendants' argument that any "Incident" alleged in the McCullough Case was not "in the performance of Professional Services" requires a careful comparison of the allegations in the McCullough Complaint and the language of the Policy. Defendants argue that Dr. Sundaram's allegedly false statements about McCullough were not in the performance of medical treatment. (See ProSelect Mot. at PageID # 460; Integrated Mot. at PageID # 474.) This reading, however, draws the scope of the Policy too narrowly and fails to note certain specific allegations in the McCullough Complaint that create a nexus between McCullough's claims and the performance of medical treatment. In particular, Defendants are not correct that the allegations against Dr. Sundaram merely had their genesis in professional services, nor are they correct that the alleged acts were not "in the performance" of professional services.

Defendants argue that it is insufficient that the mere "genesis" of the claims arose out of medical treatment. (See ProSelect Reply (ECF No. 27) at PageID # 525.) However, the allegations in the McCullough Complaint extend beyond a genesis in Dr. Sundaram's professional services. The McCullough Complaint also describes particular acts of Dr. Sundaram, relevant to McCullough's tortious interference and defamation claims, that involved medical treatment. These acts are consistent with an understanding of "professional services" as involving the "use or application of special learning or attainments of some kind." Western World Ins. Co. v. American and Foreign Ins. Co., 180 F. Supp. 2d 224, 231 (D. Me. 2002) (quoting Marx v. Hartford Acc. & Indem. Co., 183 Neb. 12, 157 N.W.2d 870, 871–72 (Neb. 1968) (citations omitted)).

The series of alleged acts by Dr. Sundaram encompasses her supervision of patient treatment ("Dr. Sundaram [claimed that she] was appropriate in not responding earlier to [McCullough's] initial message and the patient's subsequent messages," SSUF Ex. B at PageID # 314), interpretation and response to medical test results ("Dr. Sundaram falsely explained . . . the patient's INR was not elevated at that time," id. at PageID # 314), and her preferences for medical staffing (Dr. Sundaram insisted upon "an assurance that [McCullough] would not see any more of her patients," id. at PageID # 315). These statements concern the course of treatment that Dr. Sundaram, as a medical doctor, provided to her patient, and her dispute with McCullough turns, at least in part, on their disagreement concerning the appropriate management of the patient's care. The analysis of patient treatment and medical staffing involves the "special learning or attainments" of a medical professional that are indicative of professional services. See Western World Ins. Co., 180 F. Supp. 2d at 231.

Defendants contend that Dr. Sundaram's discussions with nursing supervisors did not constitute "performance" of medical treatment. (See, e.g., Integrated's Response (ECF No. 22) at

10

PageID # 492-493.)  There is little guidance in the Maine case law about the meaning of "performance" as a limiting concept in insurance contracts, but available precedent indicates that "performance" of professional services is not so constrained a concept as Defendants suggest.  In Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., acts committed by attorneys concerning a former client were construed to be "in the performance of . . . legal services" because "a lawyer's honoring of his continuing ethical duties, arising as they do out of the attorney-client relationship, is itself a 'legal service' the lawyer provides to his clients."  229 F.3d 56, 65 (1st Cir. 2000).  This construction avoids a mechanical application of the concept of "performance" by looking at the continuum of professional duties and roles performed by lawyers in connection with the professional services they provide to clients.  Likewise, here, the disagreement between McCullough and Dr. Sundaram regarding the appropriate response to patient test results and Dr. Sundaram's position regarding future home visit staffing, constitute functions and services that a doctor performs while administering and supervising her patients' courses of treatment.  In short, the Court concludes that the concept of "performance" of professional services encompasses a set of actions and responsibilities that overlaps with Dr. Sundaram's alleged acts.

Construed broadly, as required under Maine law, the McCullough Complaint contains allegations of an "Incident in the performance of Professional Services."  Therefore, unless the claims are otherwise entirely excluded under the other provisions of the Policy, Defendant ProSelect has a duty to defend against those claims.

### B. Exclusion of Dishonest or Criminal Acts

Defendants argue that, even if McCullough's claims would otherwise fall within the scope of the Policy's coverage provision, the Policy separately excludes these claims. The Policy's "Exclusion of Dishonest or Criminal Acts" provision states that Claims (as defined in the Policy) are excluded where they "[a]ris[e] out of any dishonest, fraudulent, criminal or malicious acts or omissions or deliberate or intentional wrongdoing or bad faith committed or alleged to have been committed by any Insured." (SSUF Ex. C at PageID # 335.)

Under Maine law, an insurer may refuse to defend an action if the allegations fall entirely within a policy exclusion. See Johnson v. Amica Mut. Ins. Co., 733 A.2d 977 (Me. 1999). However, policy exclusions are construed strictly against the insurer. Hall v. Patriot Mut. Ins. Co., 942 A.2d 663, 666 (Me. 2007). To determine whether McCullough's claims are excluded, the Policy's exclusion language is compared to each of the two claims against Plaintiff, tortious interference with contract and defamation.

### 1. Tortious interference claim falls within the exclusion.

A tortious interference claim requires a finding that the defendant acted with "fraud or intimidation" in procuring a breach of contract. C.N. Brown Co. v. Gillen, 569 A.2d 1206, 1210 (Me. 1990). Fraudulent acts are specifically excluded by the Policy, while intimidation to procure a breach would constitute "deliberate or intentional wrongdoing" under the Policy's exclusions. See Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1353-1354 (Me. 1996) (distinguishing tortious interference claims as falling outside of an insurance policy's coverage for "an accident"). Consequently, the claim of tortious interference with contract falls entirely within the "Exclusion of Dishonest or Criminal Acts" provision.

### 2. Defamation claim is not excluded.

In contrast to tortious interference, a defamation claim in Maine requires that a plaintiff establish that the defendant possessed a mental state of at least negligence. Morgan v. Kooistra, 941 A.2d 447 (Me. 2008). Defendants argue that the McCullough Complaint only advances a theory that Dr. Sundaram intentionally and maliciously defamed McCullough. According to Defendants, the defamation claim should therefore be excluded from coverage under the Policy's "Exclusion of Dishonest or Criminal Acts" provision. (See ProSelect Mot. at PageID # 464-465; Integrated Mot. at PageID # 477-478.)

Under Maine law, an insurer's duty to defend attaches when the complaint asserting the underlying claim against the insured shows "a possibility that the liability claim falls within the insurance coverage." Union Mut. Fire Ins. Co. v. Inhabitants of Town of Topsham, 441 A.2d 1012, 1015 (Me. 1982). The factual allegations are examined to determine whether there is a possibility that the insured will ultimately have a right of indemnification. Compare A. Johnson & Co., Inc. v. Aetna Cas. and Sur. Co., 933 F.2d 66, 72 (1st Cir. 1991) (finding no duty to defend where allegations against the insured "contained factual details which were totally inconsistent with any view that" insured's actions fit within the scope of the policy) with Barrett Paving Materials, Inc. v. Cont'l Ins. Co., 488 F.3d 59, 64 (1st Cir. 2007) (finding a duty to defend where "the underlying allegations are not entirely inconsistent with" the covered events under the policy).

A statement in an underlying complaint that, if proved, would exclude a claim from indemnification, does not by itself negate the duty of an insurer to defend against such claim. See Mitchell v. Allstate Ins. Co., 36 A.3d 876, 880 (Me. 2011) (finding allegation that insured acted "in an agreed upon and concerted effort" did not result in an intentional acts exclusion, because such intent was not a required element of the underlying claim). Rather, "[W]here the events

13

giving rise to the complaint may be shown at trial to fall within the policy's coverage," an insurer is obligated to provide a defense. Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 68 (1st Cir. 2003) (applying Maine law).

In Auto Europe, an insured was alleged to have "deceptively concealed" certain charges assessed to customers as part of a "fraudulent scheme of overcharges" that was "designed to mislead and conceal." 321 F.3d at 63. However, the cause of action under which the claim against the insured was made would permit recovery where the defendant acted without intent. Though the insured's policy contained an exclusion for damages resulting from intentional acts, the panel recognized the possibility that the insured might ultimately be found liable based on non-intentional acts. Id. at 68 (explaining that "a narrow reading of the complaint's factual allegations might preclude coverage, but the alleged cause of action is sufficiently broad that a modified version of the facts could be developed at trial to show liability."). Emphasizing the broad view of the duty to defend under Maine law, the panel found that the insurer had a duty to defend, notwithstanding an intentional acts exclusion in the insured's policy.

Similarly, the present dispute involves an underlying complaint that contains allegations of intentional actions (Dr. Sundaram "knew [the false statements] were false" and "acted with malice" in making false statements, SSUF Ex. B at PageID # 318), but the cause of action may be established on a finding of only negligence. Further buttressing the Auto Europe analysis, the allegations in the McCullough Complaint are not limited to assertions that Dr. Sundaram acted intentionally. Rather, the McCullough Complaint generally accuses Dr. Sundaram of publishing a series of false or otherwise misleading statements that defamed McCullough. (See SSUF Ex. B at PageID # 314 ("Dr. Sundaram falsely asserted that [McCullough] overreacted," "Dr. Sundaram falsely accused [McCullough] of being rude to [Dr. Sundaram's] staff," "Dr. Sundaram falsely

asserted that she had responded to [McCullough's] messages," "Dr. Sundaram falsely accused [McCullough] of being rude to her," and "Dr. Sundaram falsely stated . . . 'This is not the first time we have been treated badly by this RN.'").) Based on these general allegations, and notwithstanding the specific allegations of intentional defamation included in the McCullough Complaint, a version of the facts could be developed at trial that could result in "Damages" covered under the Policy.

Defendants argue that the decision in Prime Tanning Co., Inc. v. Liberty Mut. Ins. Co., 750 F. Supp. 2d 198 (D. Me. 2010), requires a conclusion that the defamation claim, as alleged, falls within the exclusion. In Prime Tanning, Judge Woodcock concluded that the preparation and application of a chemical byproduct as a fertilizer could not possibly fall within a "sudden and accidental" pollution insurance clause. Id. at 213-215. As noted in the decision, the insured conceded that it had used a chemical byproduct as fertilizer, deliberately and during a period of time exceeding twenty-five years. Id. at 200 & n.4. Given this concession, the court did not accept Prime Tanning's argument that, at trial, a fact pattern involving the release of the byproduct might be developed that would fit within the exception and result in indemnification under Prime Tanning's insurance policy. Id. at 205.

The present case is readily distinguishable from Prime Tanning. The Prime Tanning court carefully examined whether "any legal or factual basis . . . could be developed at trial which would obligate the insurers to pay under the policy." Id. at 209 (quoting Auto Europe, 321 F.3d at 66). The court concluded that there was no factual or legal possibility that the release could have been "sudden and accidental." Id. at 213-215. In contrast, the allegations against Dr. Sundaram include general allegations without specific reference to Dr. Sundaram's intent. The factfinder in the McCullough Case could potentially conclude that Dr. Sundaram negligently defamed

15

McCullough.  The facts alleged in the McCullough Complaint, like the alleged facts in <u>Auto Europe</u> and unlike the alleged facts in <u>Prime Tanning</u>, include "the possibility of unintentional conduct."  <u>Auto Europe</u>, 321 F.3d at 67-68.

The duty to defend is broader than the duty to indemnify, and the former applies where it is not yet clear whether the latter will ultimately apply as well.  <u>Commercial Union Ins. Co. v. Royal Ins. Co.</u>, 658 A.2d 1081, 1083 (Me. 1995).  While the defamation claim made against Plaintiff may ultimately prove to be outside the scope of indemnification under the Policy, Defendant ProSelect has the obligation to defend Dr. Sundaram against it.

**3.  If one claim is not excluded, Defendant ProSelect has a duty to defend both claims.**

In Maine, the duty to defend against a claim extends to other claims arising from common facts which cannot be clearly differentiated for the purposes of funding and organizing a defense.  <u>See</u> <u>Gibson v. Farm Family Mut. Ins. Co.</u>, 673 A.2d 1350, 1353-1354 (Me. 1996); <u>Home Ins. Co. v. St. Paul Fire & Marine Ins. Co.</u>, 229 F.3d 56, 65-66 (1st Cir. 2000) (finding a derivative duty to defend where allegations relating to the claims are "intertwined" and apportionment of defense costs between the claims is not practicable).

Here, the defamation and tortious interference claims are based on a set of common facts: the interactions between McCullough and Dr. Sundaram's medical office, and Dr. Sundaram's conversations with managers at HHVN.  The statements that McCullough identifies as the basis for her defamation claim are the same statements that McCullough also claims are the source of fraudulent or intimidating interference with her employment relationship with HHVN.  The two claims are therefore closely intertwined, and share a common set of facts that would make any attempt to differentiate and separately defend them impracticable.

McCullough's claims fall within the scope of coverage under the Policy and are not excluded from coverage under the "Exclusion of Dishonest or Criminal Acts" provision. Therefore, Plaintiffs' Motion for Summary Judgment is GRANTED and Defendants' Motions for Summary Judgment are DENIED.

### III.  CONCLUSION

For the reasons just stated, Plaintiff's Motion for Summary Judgment (ECF No. 21) is GRANTED and Defendants' Motions for Summary Judgment (ECF Nos. 19 and 20) are DENIED.

Pursuant to the May 1, 2015 Endorsement Order, the parties shall within fifteen days of today confer and report to the Court as to whether a further discovery plan is necessary and, if so, propose a second alternative scheduling order for the Court's review.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 10th day of September, 2015.